```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE LOOMIS COMPANY              :         CIVIL ACTION
                                :
          v.                    :
                                :
KEYW CORPORATION                :         No. 13-974
```

MEMORANDUM

McLaughlin, J.                                      May 13, 2015

This breach-of-contract action arises out of the defendant KEYW Corporation's ("KEYW") decision to use a new insurance broker after its former insurance broker, The Loomis Company ("Loomis"), had negotiated an insurance policy on KEYW's behalf with KEYW's insurance provider, X.L. America, Inc. ("X.L."). Loomis claims that it is entitled to commission on the policy it negotiated for KEYW, despite the fact that KEYW purchased its policy through a different broker (also with X.L. as the insurance provider). KEYW has moved for summary judgment as to Loomis's claims for breach of contract, breach of contract implied in fact, and unjust enrichment. Oral argument was held on May 1, 2015. The Court will grant the defendant's motion for summary judgment.

1

I.  Summary Judgment Record[1]

Loomis is an insurance producer licensed by the Pennsylvania Insurance Department.  Insurance producers (also known as insurance brokers) are the liaison between insured parties and the company that provides the insurance policies (the insurance provider).  Harder Tr. 14:1-3, 26:8-11.

KEYW, formed in 2008, provides computer services to the federal government and private businesses.  The Jacobs Company ("Jacobs") has served as KEYW's insurance broker since 2008.  Voigt Tr. 16:5-11.

In 2011, KEYW acquired Flight Landata, Inc. ("Landata"), an airborne intelligence surveillance and recognizance company.  When Landata was acquired, Loomis was serving as Landata's insurance producer.  Following the acquisition, KEYW continued to use Loomis as the insurance producer for Landata's policy; Loomis was the insurance producer for Landata's 2011-2012 policy.  Harder Tr. 16:1-9, 26:8-11; Botha Tr. 26:5-15, 13:19-20;  Hughes Cert. Ex. D.

Loomis did not discuss or disclose the commissions it received for Landata's insurance policies with KEYW; nor did the policies themselves address the commissions earned by Loomis.

---

[1]   On a motion for summary judgment, the Court considers the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1866, (2014). The facts set forward herein are undisputed unless otherwise noted.

Additionally, Loomis's insurance policy with Landata did not set forth any fee in addition to the premiums that Loomis would charge KEYW. KEYW's representatives testified that they were unaware of the exact commission Loomis earned on Landata's policies. Botha Tr. 36:12-37:18; Harder Tr. 27:18-28:4, 38:16-39:1, 39:22-40:11; Hughes Cert. Exs. Q-S.

Rather, the commission earned by Loomis on the Landata policy was negotiated between Loomis and the insurance provider X.L. and memorialized in insurance producer agreements between Loomis and X.L.[2] The insurance producer agreements set Loomis's commission as a percentage of the total premium paid by the insured party (in this case KEYW), and required Loomis to disclose to the insured party the commissions it received on the policies. Neither KEYW nor Landata was a party to the insurance producer agreements. Def.'s Mot. for S.J. Exs. E,F; Harder Tr. 23:21-24:5, 24:22-25:1.

---

[2] Loomis and X.L. entered into an insurance producer agreement on March 15, 2006; Loomis and X.L. entered into a second insurance producer agreement on September 27, 2012. Hughes Cert. Ex. E.

Loomis explains that while Loomis and X.L. negotiated Loomis's commissions, it was not "standard industry practice" to do so and most commissions were set at an "industry standard level," of which KEYW would have been aware. Industry standard commissions, however, are not at issue in this case and there is no evidence in the summary judgment record that KEYW was aware of the commissions negotiated between Loomis and X.L.

Loomis did not disclose to KEYW the amount of any commissions it was to earn on KEYW's policies. When Loomis issued an insurance policy to Landata, it would invoice KEYW for the premiums due and then forward the premium payment, net of Loomis's commission, to X.L. KEYW never paid Loomis a commission; the only payment made by KEYW to Loomis was for KEYW's insurance premiums. Harder Tr. 25:16-26:7, 27:18-28:4, 35:3-17, 39:22-40:10.

In an October 7, 2011 e-mail from KEYW to Loomis, KEYW confirmed that Loomis would continue to serve as Landata's insurance broker for its 2011-2012 policy. In the e-mail, KEYW further stated: "we are not promising we won't transfer the insurance to one broker in the future." Hughes Cert. Ex. D.

In August 2012, Loomis contacted KEYW to discuss renewing Landata's 2011-2012 policy for the 2012-2013 policy term. On August 20, 2012, KEYW instructed Loomis to proceed with the renewal of the policy. Once instructed to proceed with the renewal, Loomis negotiated a ten percent premium reduction for Landata with X.L. and delivered the insurance proposal to KEYW. The insurance proposal delivered to KEYW did not refer to the commission Loomis expected to earn on the policy. Hughes Cert. Ex. G-J.

On August 23, 2012, KEYW instructed Loomis to "bind" the insurance policy consistent with the proposal. On October

25, 2012, Loomis provided KEYW with an insurance binder and a proposed premium financing agreement.[3]  Hughes Cert. Ex. K, L.

Before X.L. issued the Landata insurance policy negotiated by Loomis, KEYW notified X.L. that it would be naming Jacobs as the insurance agent of record for Landata's 2012-2013 policy.  This gave Jacobs – rather than Loomis – the right to negotiate on behalf of KEYW with X.L. and ultimately the right to the commission on the policy.  Harder Tr. 33:21-34:1.

The insurance producer agreement between X.L. and Loomis provided that "should a conflict exist as to which party is authorized to represent an existing or prospective policy holder with respect to any insurance which is the subject of [the agreements], the policyholder's signed written on company letterhead, designating its representative shall control." Def.'s Mot. for S.J. Exs. E, F.

Jacobs proceeded to negotiate a 2012-2013 insurance policy for Landata with X.L. and delivered the negotiated policy to KEYW.  The defendant characterizes the policy delivered by Jacobs as being "distinct" from the policy proposed by Loomis in

---

[3] An insurance binder is an agreement between the insurance producer and the insured that provides temporary evidence of insurance coverage until the final policy can be issued.  An insurance binder is distinct, however, from the policy itself and an insurance policy can be modified or canceled after a binder is delivered.  Voigt Tr. 41:3-8; Harder Tr. 49:22-50:2.

5

that: (1) the limit of personal injury liability was increased from $1,750,000 to $3,000,000; (2) the coverage limit for temporary rental of a replacement part was increased from $50,000 to $500,000; and (3) coverage for mechanics' tools was added.[4]  The policy also contained a ten percent discount, the same discount initially negotiated by Loomis.[5]  KEYW's premium for the Jacobs's 2012-2013 policy was the same premium paid for Loomis's 2011-2012 policy.  Jacobs received a commission from X.L. for the Landata policy pursuant to an insurance producer agreement between Jacobs and X.L.  Def.'s Mot. for S.J. Exs. J, N; Hughes Cert. Ex. N; Voigt Tr. 14:18-15:3, 37:3-14, 38:11-21, 39:15-40:16.

On November 9, 2012, Loomis sent an invoice for $134,291 to KEYW, claiming that it had earned that amount as a commission when X.L. issued Landata's 2012-2013 policy through Jacobs.  KEYW rejected the invoice as improper.  Hughes Cert. Ex. O, P.

---

[4]     The plaintiff disputes that the policy was "distinct," but the summary judgment record contains no evidence that creates a material dispute of fact as to whether the policy was different.  The plaintiff argues that (1) the limit on personal injury liability was "unnecessary"; (2) the original $50,000 figure was a typographical error in its proposal; and (3) the mechanics coverage was "minimal."

[5]     X.L. was not bound by the Loomis-negotiated discount because the terms of the insurance policy changed.

II. <u>Analysis</u>[6]

      KEYW has argued that summary judgment is appropriate because: (1) no contract actual or implied existed between the parties; (2) it was not unjustly enriched by Loomis's policy negotiations; (3) Pennsylvania insurance regulations bar Loomis's recovery; and (4) insured parties have the right to reinsure with new agents of their choosing.  The Court agrees that there are no genuine issues of material fact as to the plaintiff's claims and grants KEYW's motion for summary judgment.

    A.   <u>No Contract Existed Between Loomis and KEYW</u>

      Under Pennsylvania law, three elements are necessary to establish a claim for breach of contract: (1) the existence of a contract; (2) the breach of a duty imposed by the contract; and (3) damages arising from the breach.  <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir. 2003).  A contract exists only

---

[6] Under Federal Rule of Civil Procedure 56, a party moving for summary judgment must show that there is no genuine issue as to any material fact and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  <u>Id</u>. at 247-48.

when there has been a "meeting of the minds" as demonstrated by the offer and acceptance.  Mountain Props. v. Tyler Hill Realty Corp., 767 A.2d 1096, 1101 (Pa. Super. Ct. 2001); see also Helpin v. Trustees of Univ. of Pennsylvania, 969 A.2d 601, 610 (Pa. Super. Ct. 2009).

Parties' intention to contract is not sufficient to establish a breach of contract claim; the parties themselves must agree on the essential terms of the bargain.  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 585 (3d Cir. 2009).  "[E]vidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract."  Channel Home Ctrs., Div. of Grace Retail Corp. v. Grossman, 795 F.2d 291, 298 (3d Cir. 1986).

Loomis has argued that an oral contract existed between it and KEYW through which KEYW had agreed to purchase an insurance policy for the 2012-2013 policy term.  The summary judgment record, however, contains no evidence that a contract between Loomis and KEYW existed for a 2012-2013 insurance policy.  KEYW did not agree to purchase an insurance policy from Loomis or pay premiums on a policy.  Although Loomis argues in its opposition that the "operative facts of this case" occurred prior to KEYW notifying X.L. that Jacobs would be its agent of record, none of these facts resulted in the formation of a contract.

8

Instead, the "operative facts" highlighted by Loomis – the delivery of proposals and discussion of policy terms – establish that an active contract negotiation was taking place.[7] A contract negotiation alone cannot give rise to a breach of contract claim. See Channel Home Ctrs., 795 F.2d at 298.

Additionally, the summary judgment record contains no evidence that KEYW had agreed to pay Loomis a commission for its services. Loomis never discussed with KEYW the commission it earned on its KEYW policies, and Loomis never disclosed the commissions earned in KEYW's written insurance policies. KEYW was not a party to the insurance producer agreement between Loomis and X.L. that set forth the commissions Loomis was to earn on KEYW's policies. An insured party is not liable to

---

[7] Loomis has argued that by asking Loomis to "bind" the policy, KEYW agreed to purchase an insurance policy. The insurance binder provided by Loomis to KEYW, however, does not give a right to relief for the commission because the binder was a contract separate and distinct from any insurance policy and commissions are only earned only on the writing of the policy itself. Under Pennsylvania law, an insurance binder remains in effect "until either the policy is issued or the risk is declined and notice thereof is given." Strickler v. Huffine, 618 A.2d 430, 433 (Pa. Super. Ct. 1992); see also 1 Couch on Insurance 3d § 13.2 (explaining that a binder is not an insurance policy, but a separate contract providing interim insurance until a policy is issued or rejected). After receiving the binder, KEYW retained the ability to modify or reject the coverage; the insurance binder ceased to exist upon KEYW's rejection of the coverage. Therefore, although the insurance binder itself was a contract between the parties, it was not a contract that gave rise to any right to a commission for Loomis.

compensate an insurance broker unless there is an express or implied agreement to pay compensation; the fact that an insured party may have received a benefit from the broker's services does not itself give rise to an obligation absent an insurance policy.  1 Couch on Insurance 3d § 46.76.[8]

The Court, therefore, grants summary judgment as to Loomis's breach of contract claim.

  B. <u>No Quasi-Contract Existed Between Loomis and KEYW</u>

"A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from facts in the light of the surrounding circumstances." <u>Elias v. Elias</u>, 428 Pa. 159, 161 (Pa. 1968). The elements necessary to form a contract implied in fact are identical to those necessary to form an express contract. <u>Penn. Cent. Transp. Co.</u>, 831 F.2d 1221, 1227 (3d Cir. 1987).

Loomis's breach of implied in fact contract claim fails for the same reason its breach of contract claim fails: there is no evidence in the summary judgment record that any

---

[8] Similarly, courts in other states have found that insurance producers do not have the right to recover anticipated commissions when a prospective insured rejects a policy because to allow such recovery would limit the right of an insured to cancel a policy before a premium is paid.  See <u>Arden v. Freydberg</u>, 9 N.Y.2d 393, 395 (N.Y. 1961); <u>Friedman v. Markman</u>, 11 A.D.2d 57, 61-62 (N.Y. 1st Dept. 1960).

contract giving rise to the payment of commissions existed between Loomis and KEYW. The Court, therefore, grants summary judgment as to Loomis's quasi-contract claim.

      C.    <u>Loomis Has Not Established Unjust Enrichment</u>

To establish a claim for unjust enrichment under Pennsylvania law, a plaintiff must present facts that establish "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for defendant to retain the benefit without payment to the plaintiff." <u>EBC, Inc. v. Clark Bldg. Systems, Inc.</u>, 618 F.3d 253, 273 (3d Cir. 2010)(citing <u>AmeriPro Search, Inc. v. Fleming Steel Co.</u>, 787 A.2d 988, 991 (Pa. Super. Ct. 2001). Traditionally, an unjust enrichment claim allows a plaintiff to recover from a defendant for a benefit conferred under an "unconsummated or void contract" the value of the benefit incurred. <u>Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris</u>, 171 F.3d 912, 936 (3d Cir. 1999); <u>see also</u> <u>Boring v. Google</u>, 362 F. App'x 273, 281 (3d Cir. 2010).

The most important consideration in an unjust enrichment analysis is whether the enrichment is unconscionable; a plaintiff cannot recover simply because the defendant may have

benefitted from the plaintiff's actions.  <u>EBC, Inc.</u>, 618 F.3d at 273-74.  A plaintiff must show that the defendant "either wrongfully secured or passively received a benefit that...would be unconscionable for [it] to retain."  <u>Sovereign Bank v. BJ's Wholesale Club, Inc.</u>, 533 F.3d 162, 180 (3d Cir. 2008).

The parties do not dispute that the policy KEYW ultimately purchased from Jacobs included the ten-percent discount initially negotiated by Loomis.  Loomis argues that it would be inequitable to allow KEYW to obtain the benefit of the reduction.  Loomis's negotiations on KEYW's behalf may have benefitted KEYW in its ultimate policy; a reasonable factfinder, however, could not find that retaining the benefit of the discount was unconscionable to retain under the circumstances.

To allow a claim for unjust enrichment in this instance would undermine the ability of an insured party – in this case KEYW – to negotiate with potential insurance brokers.  During the negotiation process, multiple insurance brokers may likely negotiate discounts for a potential insured party when preparing policy proposals.  It is also likely that an insured party will use those discounts to further negotiate potential policies.  For an insured to use negotiated discounts in negotiating other policy proposals is not unconscionable, but standard practice in procurement.  Further, allowing Loomis to proceed with a claim for unjust enrichment would disrupt the

ability of an insured party to change insurance brokers when it so desires. The Court, therefore, finds that summary judgment is appropriate as to Loomis's unjust enrichment claim.

An appropriate order shall issue.